**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **CHIMENG LO,** | § | |
| | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:17-cv-00674-O** |
| | § | |
| **XPO LOGISTICS-SC OF TEXAS, LLC** | § | |
| **AND XPO LOGISTICS, INC.,** | § | |
| | § | |
| **DEFENDANTS.** | § | |

**PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION**


Douglas B. Welmaker, Esq.
Attorney-in-Charge
State Bar No. 00788641
Scotty Jones, Esq.
State Bar No. 00796848
DUNHAM & JONES ATTORNEYS AT LAW, P.C.
1800 Guadalupe Street
Austin, Texas 78701
Tel: (512) 777-7777
Fax: (512) 340-4051
Email: doug@dunhamlaw.com


Michael R. Minkoff, Esq. (admitted *pro-hac vice*)
Alexander T. Coleman, Esq. (admitted *pro-hac vice*)
Michael J. Borrelli, Esq. (admitted *pro-hac vice*)
BORRELLI & ASSOCIATES, P.L.L.C.
655 Third Avenue, Suite 1821
New York, New York 10017
Tel: (212) 679-5000
Fax: (212) 679-5005
Email: mrm@employmentlawyernewyork.com
ATTORNEYS FOR PLAINTIFF AND
PUTATIVE MEMBERS OF THE COLLECTIVE

<strong><u>TABLE OF CONTENTS</u></strong>

**TABLE OF AUTHORITIES** ..................................................................................................... iii

**I.     INTRODUCTION** .................................................................................................... 1

**II.    FACTUAL AND PROCEDURAL BACKGROUND** .................................................. 2

**III.   ARGUMENT** ............................................................................................................ 9

    **A.     Legal Standard for Section 216(b) Notice to Putative Class Members: The Remedial Purposes of the FLSA Warrant Prompt and Accurate Notice to Potential Collective Action Members.** ................................................. 9

    **B.     Nation-wide Notice Is Appropriate on the Facts Presented Because the Putative Class Members are Similarly Situated.** ............................................. 11

        *1.     A Reasonable Basis Exists to Believe Aggrieved Individuals Exist.* .......... 11

        *2.     The Aggrieved Individuals Are Similarly Situated to Plaintiff in Relevant Respects.* ................................................................................. 13

        *3.     Similarly Situated Potential Plaintiffs Exist Around the Country.* ........... 15

**IV.    RELIEF SOUGHT** ................................................................................................. 16

    **A.     The Court Should Allow Plaintiff to Send Notice to All Operations Supervisors who Worked for Defendants from Three Years before the Commencement of this Action to the Present.** ................................................................................. 16

    **B.     The Court Should Order Defendants to Produce Potential Collective Members' Contact Information.** ........................................................................ 18

    **C.     The Court should permit Plaintiff to send a Notice and a Reminder Notice via mail, email, and text message** .................................................................... 19

    **D.     The Court Should Order that Defendants Post Notices in the Workplace at all Locations.** ................................................................................................. 22

**V.     CONCLUSION** ..................................................................................................... 23

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Aguirre v. SBC Commc'ns, Inc.*,
   2006 WL 964554 (S.D. Tex. Apr. 11, 2006) ........................................................ 11

*Allen v. McWane, Inc.*,
   2006 WL 3246531 (E.D. Tex. Nov. 7, 2006) ...................................................... 10

*Alverson v. BL Rest. Operations, LLC*,
   2017 WL 5491998 (W.D. Tex. Nov. 15, 2017) .................................................. 12

*Batres v. Valente Landscaping, Inc.*,
   2014 WL 2111080 (E.D.N.Y. May 21, 2014) .................................................... 22

*Bhumitharnarn v. 22 Noodle Market Corp.*,
   2015 WL 4240985 (S.D.N.Y. July 13, 2015) .................................................... 20

*Birdi v. Brandi's Hope Cmty. Servs., LLC*,
   2017 WL 2588089 (S.D. Miss. June 14, 2017) .................................................. 19

*Braunstein v. E. Photographic Labs, Inc.*,
   600 F.2d 335 (2d Cir. 1978) ................................................................................. 9

*Burns v. Chesapeake Energy, Inc.*,
   2017 WL 1842937 (W.D. Tex. Mar. 14, 2017) ................................................ 19

*Coronado v. D. N.W. Houston, Inc.*,
   2014 WL 2779548 (S.D. Tex. June 19, 2014) .................................................. 17

*Dearmond v. Alliance Energy Servs., L.L.C.*,
   2017 WL 3173553 (E.D. La. July 25, 2017) .............................................. 20, 21

*Dybach v. Fla. Dept. of Corrections*,
   942 F.2d 1562 (11th Cir. 1991) .......................................................................... 14

*Dyson v. Stuart Petroleum Testers, Inc.*,
   308 F.R.D. 510 (W.D. Tex. 2015) ...................................................................... 18

*Eley v. Stadium Group, LLC*,
   2015 WL 5611331 (D.D.C. Sept. 22, 2015) .................................................... 20

*Escobar v. Ramelli Group, L.L.C.*,
   2017 WL 3024741 (E.D. La. July 7, 2017) ....................................................... 20, 21

*Fa Ting Wang v. Empire State Auto Corp.*,
   2015 WL 4603117 (E.D.N.Y. July 29, 2015) ......................................................... 18

*Flowers v. Mo's Steakhouse*,
   2012 WL 1941755 (S.D. Tex. May 29, 2012) ......................................................... 14

*Foraker v. Highpoint S.W. Servs., L.P.*,
   2006 WL 258047 (S.D. Tex. Sept. 7, 2006) ....................................................... 11, 13

*Garcia v. TWC Admin., LLC*,
   2015 WL 1737932 (W.D. Tex. Apr. 16, 2015) ......................................................... 22

*Garner v. G.D. Searle*,
   802 F. Supp. 418 (M.D. Ala. 1991) ......................................................................... 10

*Gronefeld v. Integrated Prod. Servs., Inc.*,
   2016 WL 8673851 (W.D. Tex. Apr. 26, 2016) ......................................................... 19

*H&R Block, LTD. v. Housden & Beard*,
   186 F.R.D. 399 (E.D. Tex. 1999) ........................................................................... 10

*Harhash v. Infinity West Shoes, Inc.*,
   2011 WL 4001072 (S.D.N.Y. Aug. 24, 2011) ......................................................... 22

*Hernandez v. Bare Burger Dio, Inc.*,
   2013 WL 3199292 (S.D.N.Y. June 25, 2013) ......................................................... 18

*Hernandez v. Merrill Lynch & Co., Inc.*,
   2012 WL 1193836 (S.D.N.Y. Apr. 6, 2012) ........................................................... 18

*Hoffman-La Roche, Inc. v. Sperling*,
   493 U.S. 165 (1989) ........................................................................................... 9, 15

*Hoffmann v. Sbarro Inc.*,
   982 F. Supp. 249 (S.D.N.Y. 1997) (Sotomayor, *J.*) ................................................ 9

*Irvine v. Destination Wild Dunes Mgmt., Inc.*,
   132 F. Supp.3d 707 (D.S.C. 2015) ........................................................................ 20

*Jaso v. Bulldog Connection Specialists, LLC*,
   2015 WL 11144603 (S.D. Tex. Oct. 15, 2015) ....................................................... 18

iv

*Jie Zhang v. Wen Mei, Inc.*,
    2015 WL 6442545 (E.D.N.Y. Oct. 23, 2015) ........................................................... 13

*Jones v. Cretic Energy Servs., LLC*,
    149 F. Supp. 3d 761 (S.D. Tex. 2015) ............................................................ 20, 22

*Kaluom v. Stolt Offshore, Inc.*,
    474 F.Supp.2d 866 (S.D.Tex. 2007) ............................................................... 9

*Kim Man Fan v. Ping's on Mott, Inc.*,
    2014 WL 1512034 (S.D.N.Y. Apr. 14, 2014) ......................................................... 22

*LaChappelle v. Owens-Illinois, Inc.*,
    513 F.2d 286 (5th Cir. 1975) ................................................................... 2

*Lee v. Metrocare Services*,
    980 F. Supp. 2d 754 (N.D. Tex. 2013) (O'Connor, *J.*) ..................................... *passim*

*Lee v. Veolia ES Indus. Servs., Inc.*,
    2013 WL 2298216 (E.D. Tex. May 23, 2013) ......................................................... 10

*Lusardi v. Xerox Corp.*,
    122 F.R.D. 463 (D.N.J. 1988) ................................................................. 9, 12

*Mahrous v. LKM Enterprises, L.L.C.*,
    2017 WL 2730886 (E.D. La. June 26, 2017) ..................................................... 20, 21

*Marin v. Apple-Metro, Inc.*,
    2014 WL 7271591 (E.D.N.Y. Sept. 16, 2014) ....................................................... 16

*Marshall v. Lousiana*,
    2017 WL 86137 (E.D. La. Jan. 10, 2017) ........................................................... 16

*Mata-Primitivo v. May Tong Trading, Inc.*,
    2014 WL 2002884 (E.D.N.Y. May 15, 2014) ......................................................... 16

*McCarragher v. Ryland Group, Inc.*,
    2012 WL 4857575 (S.D. Tex. Oct. 11, 2012) ....................................................... 12

*McKinzie v. Westlake Hardware, Inc.*,
    2010 WL 2426310 (W.D. Mo. Jun. 11, 2010) ....................................................... 21

*Minyard v. Double D Tong, Inc.*,
    237 F. Supp. 3d 480 (W.D. Tex. 2017) ............................................................. 22

*Mongiove v. Nate's Corp.*,
2016 WL 590460 (E.D.N.Y. Feb. 11, 2016) ............................................................................... 19

*Mooney v. Aramco Servs. Co.*,
54 F.3d 1207 (5th Cir. 1995) ...................................................................................... 9, 10

*Morris v. Lettire Const. Corp.*,
896 F. Supp. 2d 265 (S.D.N.Y. 2012) ....................................................................................... 19

*Muhammad v. GBJ, Inc.*,
2011 WL 863785 (S.D. Tex. Mar. 9, 2011) ........................................................................ 2, 8

*Nieto v. Pizzati Enter., Inc.*,
2017 WL 1153375 (E.D. La. Mar. 27, 2017) ............................................................................ 9

*Orozco v. Anamia's Tex-Mex, Inc.*,
2016 WL 6311237 (N.D. Tex. Oct. 6, 2016) ............................................................................ 9

*Page v. Crescent Directional Drilling, L.P.*,
2015 WL 12660425 (W.D. Tex. Dec. 10, 2015) ................................................................... 18, 19

*Pedigo v. 3003 S. Lamar, LLP*,
666 F. Supp. 2d 693 (W.D. Tex. 2009) .............................................................................. 10, 15

*Ramos v. Capitan Corp.*,
2016 WL 8674617 (W.D. Tex. May 18, 2016) ......................................................................... 20

*Raniere v. Citigroup, Inc.*,
827 F. Supp. 2d 294 (S.D.N.Y. 2011) ....................................................................................... 8

*Realite v. Ark Restaurants Corp.*,
7 F.Supp. 2d 303 (S.D.N.Y. 1998) ........................................................................................... 12

*Romero v. Producers Dairy Foods, Inc.*,
235 F.R.D. 474 (E.D. Cal. 2006) ............................................................................................. 22

*Rosario v. Valentine Ave. Discount Store, Co., Inc.*,
828 F. Supp. 2d 508 (E.D.N.Y. 2011) ...................................................................................... 22

*Ryan v. Staff Care, Inc.*,
497 F. Supp. 2d 820 (N.D. Tex. 2007) ...................................................................................... 9

*Scherrer v. S.J.G. Corp.*,
2008 WL 7003809 (W.D. Tex. Oct. 10, 2008) .................................................................. 10, 13

*Shaffner v. Cash Register Sales & Serv. of Houston, Inc.*,
    2006 WL 1007542 (S.D. Tex. Apr. 17, 2006) ........................................................................ 15

*Sperling v. Hoffman-LaRoche, Inc.*,
    118 F.R.D. 392 (3d Cir. 1988) ............................................................................................... 10

*Sultonmurodov v. Mesivita of Long Beach*,
    2015 WL 5918415 (E.D.N.Y. Oct. 9, 2015) ................................................................... 16, 19

*Tamez v. BHP Billiton Petroleum (Americas), Inc.*,
    2015 WL 7075971 (W.D. Tex. Oct. 5, 2015) ........................................................................ 16

*Valerio v. RNC Industries, LLC*,
    2:14-cv-03761 (LDW)(AKT), ECF # 51 (E.D.N.Y. Jun. 24, 2016) ....................................... 19

*Vargas v. HEB Grocery Co., LP*,
    2012 WL 4098996 (W.D. Tex. Sept. 17, 2012) ..................................................................... 12

*Vassallo v. Goodman Networks, Inc.*,
    2015 WL 3793208 (E.D. Tex. June 17, 2015) ................................................................. 10, 13

*Vasto v. Credico* (USA) LLC,
    2016 WL 2658172 (S.D.N.Y. May 5, 2016) .......................................................................... 21

*Vega v. Point Security, LLC*,
    2017 WL 4023289 (W.D. Tex. Sept. 13, 2017) ..................................................................... 21

*Venable v. Schlumberger Ltd. (Schlumberger N.V.)*,
    2017 WL 2870400 (W.D. La. June 5, 2017) ......................................................................... 17

*White v. MPW Indus. Servs., Inc.*,
    236 F.R.D. 363 (E.D. Tenn. 2006) ........................................................................................ 10

*Whitehorn v. Wolfgang's Steakhouse, Inc.*,
    767 F. Supp. 2d 445 (S.D.N.Y. 2011) ................................................................................... 17

**Statutes**                                                                                                          **Page(s)**

29 U.S.C. § 216(b) .................................................................................................................... 1, 2, 8

29 U.S.C. § 255(a) ........................................................................................................................... 9

29 U.S.C. § 256................................................................................................................... 2

I.  **INTRODUCTION**

Plaintiff Chimeng Lo ("Plaintiff") brought this action on behalf of himself, individually, and all similarly situated employees to recover unlawfully withheld overtime wages and related damages based on Defendants XPO Logistics-SC of Texas, LLC's ("XPO of Texas") and XPO Logistics, Inc.'s ("XPO Logistics") (together, where appropriate, as "XPO" or "Defendants") violations of the Fair Labor Standards Act of 1938, as amended ("FLSA"), 29 U.S.C. § 216(b), *et seq*.  The FLSA permits an employee to bring an action to recover wages owed to "himself . . . and other employees similarly situated." 29 U.S.C. § 216(b).  Now, through this Motion, Plaintiff seeks conditional certification of a nation-wide collective action consisting of:

> All current or former "operations supervisors" or other similar titles (together, hereinafter, as "Operations Supervisors") who worked for XPO at any time from August 15, 2014 to the present, and who were paid overtime at their respective "straight-time" hourly rates of pay if they worked over fifty hours each week, and who were not paid any compensation, let alone overtime compensation, for any hours worked between forty and fifty each week ("the FLSA Class").

Conditional certification is amply appropriate here because the Operations Supervisors that Plaintiff seeks to represent performed similar job duties and were all subject to the same company-wide pay policies (regardless of any allegedly individualized factors) and are thus similarly situated.  Because, as described in greater detail below, Plaintiff has met what this Court has characterized as the "light burden" for conditional certification, *Lee v. Metrocare Services*, 980 F. Supp. 2d 754, 766 (N.D. Tex. 2013) (O'Connor, *J.*), Plaintiff respectfully requests that this Court conditionally certify this case as a nation-wide collective action and authorize notice to the class of current and former Operations Supervisors who may be owed overtime wages.

Notice at this stage is critical so that these Operations Supervisors can make an informed decision about whether to join this suit and stop the statute of limitations from running on their

claims for unpaid overtime compensation.[1]  Accordingly, Plaintiff respectfully requests that the Court grant this Motion in its entirety and: (1) conditionally certify this action for purposes of notice and discovery; (2) order that a judicially approved notice be sent to all putative FLSA Class members; (3) approve the form and content of Plaintiff's proposed notice and reminder notice, attached hereto as Exhibits L and M; (4) order XPO to produce to Plaintiff's counsel a list in electronic, computer-readable format, providing the name, last known address, all home and mobile phone numbers, all email addresses, work locations, and dates of employment for each putative member of the FLSA Class; (5) authorize a sixty-day notice period for the putative members to join this case; (6) authorize Plaintiff's counsel to send the notice via mail, email, and text message to putative members; (7) order Defendants to post the Notice in a conspicuous location frequented by putative FLSA Class members at all of Defendants' locations throughout the United States; (8) permit Plaintiff's counsel to send a reminder notice via mail, email, and text message thirty days after the mailing of the initial notice period; and (9) any further such relief this Court deems proper.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Defendant, XPO Logistics, Inc., boasts that it is a "top ten global logistics company . . . run [ ] as one highly integrated network of people, technology, and physical assets . . . with over

---

[1] Unlike Rule 23 class actions in which the statute of limitations is tolled for all potential class members with the filing of the complaint, the statute of limitations under the FLSA is not tolled with the commencement of the action or even with an order granting conditional certification. *Muhammad v. GBJ, Inc.*, 2011 WL 863785, at *1-2 (S.D. Tex. Mar. 9, 2011) (citing *LaChappelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288-89 (5th Cir. 1975)). Rather, the statute of limitations continues to run on each individual's claim until they file their written consent to join the action with the court. *Id.*; *Lee*, 980 F. Supp. 2d at 769 n.10 (citing 29 U.S.C. § 256); *see also* 29 U.S.C. § 216(b) ("No employee shall be a party Plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.")

91,000 employees and 1,444 locations." XPO Logistics, *About Us*, XPO.com (hereinafter, "XPO.com, *About Us*"), https://www.xpo.com/about-us/our-company (last accessed November 30, 2017 at 11:43 a.m. EST).  One of XPO Logistics, Inc.'s "approximately 320" subsidiaries is XPO Logistics Supply Chain of Texas, LLC.[2] *See* Ex. A, contained in the Appendix of Exhibits (hereinafter, "App."), App., pp. 4-5, Excerpt from XPO Logistics, Inc., United States Securities and Exchange Commission Form 10-K for Fiscal Year Ending December 31, 2016.  Though XPO Logistics, Inc. and XPO Logistics Supply Chain of Texas, LLC are two legally distinct entities, they operate as a single enterprise in that they undertake related activities, have a unified business operation with common control, and share the common business purpose to "use [XPO's] network to help customers manage their goods more efficiently throughout their supply chain." *See* FAC, ECF # 12, ¶ 3.5; XPO.com, *About Us*.

Plaintiff Chimeng Lo worked for XPO from July 6, 2015 until July 17, 2016 in the position of "Supervisor Warehouse Operations," *see* Ex. B, App., pp. 7-8, Offer Letter, at XPO's production facility in Fort Worth, Texas, Facility # 12184, *see* Ex. C, App., p. 10, XPO Fort Worth Location, *available at* https://www.xpo.com/office-locator (last accessed November 30, 2017 at 12:07 p.m. EST); FAC, ECF # 12, ¶ 1.1; Ex. D, App., p. 12, Lo Decl., ¶¶ 1-2.  In this position, which was commonly referred to as "operations supervisor," Plaintiff's primary duties required him to work side-by-side with other hourly-paid, non-exempt employees at XPO's Fort Worth facility, transporting materials, pulling production line equipment, and otherwise doing whatever

---

[2] Plaintiff's First Amended Collective Action Complaint (hereinafter, "FAC"), ECF # 12, has named this entity as XPO Logistics-SC of Texas, LLC.  Defendants' answers state that the entity's correct name is XPO Logistics Supply Chain of Texas, LLC. *See, e.g.,* Defendant's Answer to plaintiff's First Amended Collective Action Complaint, ECF # 17, at 1.

physical tasks were necessary to help the facility meet its production goals and targets. *See* FAC, ECF # 12, ¶ 5.3; Ex. D, App., p. 12, Lo Decl., ¶ 2.

XPO routinely required Plaintiff to work more than forty hours per week, generally requiring him to work at least fifty hours per week, and, on at least one occasion, as many as 112 hours in a two-week period. *See, e.g.,* Ex. E, App., pp. 16-26, Lo Paystubs; FAC, ECF # 12, ¶¶ 5.12-13, 6.3; Ex. D, App., p. 13, Lo Decl., ¶¶ 3-5.  For his work, XPO paid Plaintiff a bi-weekly salary "at a rate of $45,000 per annum" plus "at a straight time rate of $21.63 for any hours worked in excess of fifty (50) in one work week." Ex. B, Offer Letter, App., pp. 7-8; FAC, ECF # 12, ¶ 5.10; Ex. D, App., p. 13, Lo Decl., ¶¶ 3-4.  This straight-time rate is calculated by converting Plaintiff's yearly salary to a weekly salary, which is then divided by forty hours.[3] Ex. D, App., p. 13, Lo Decl., ¶ 4.  Thus, XPO willfully did not pay Plaintiff at any rate, let alone at his overtime rate of one and one-half times his regular rate of pay, for all hours worked between forty and fifty each week, or at an additional one-half of his straight-time rate for all hours worked over fifty each week. *See* Ex. B, App., pp. 7-8, Offer Letter; Ex. E, App., pp. 16-26, Paystubs; Ex. D, App., p. 13, Lo Decl., ¶¶ 3-6.

Realizing that XPO failed to pay him and other similarly situated Operations Supervisors for all of their overtime, Plaintiff commenced this action on August 15, 2017, by filing his Complaint and Consent to Join form with this Court. *See* ECF # 1, 1-1.  On September 7, 2017, Defendant XPO of Texas filed their answer, while Defendant XPO Logistics filed a pre-answer Motion to Dismiss, alleging that Plaintiff had "failed to plead sufficient factual allegations necessary to raise a reasonable inference that XPO is a proper party under the FLSA. . . ." *See* ECF

---

[3] That is, $45,000.00 divided by fifty-two weeks yields a weekly salary of $865.38.  That weekly salary divided by forty hours yields a straight-time rate of $21.63 per hour. *See also*, Ex. B, Offer Letter, App., pp. 7-8.

# 8, at 1.   On September 27, 2017, Plaintiff filed his FAC, providing additional allegations to establish Defendants' status as single enterprise under the FLSA. *See, e.g.,* FAC, ECF # 12, ¶¶ 3.5-3.7.3.7.   On October 12, 2017, both XPO Defendants filed their Answers to Plaintiff's FAC.

As Plaintiff's FAC alleges, Defendants subjected many other individuals to these same unlawful payment practices around the United States.   When hired, Defendants required Plaintiff to execute an employment agreement applicable to "XPO Supply Chain, Inc., its affiliates, and subsidiaries," which confirmed Plaintiff's compensation and featured a footer indicating that this agreement was a "Standard [Employee] Agreement." *See* Ex. F, App., pp. 28-43, Employment Agreement.   As one example, Ms. Kristina Travis worked as an operations supervisor for XPO's warehouse operations at a facility located in Independence, Missouri. Ex. G, App., p. 45, Travis Decl., ¶¶ 1-2.   There, like Plaintiff, Ms. Travis's job duties involved working side-by-side with hourly warehouse employees by assisting with receiving and organizing XPO's product / materials. *Id.* Ms. Travis regularly worked well in excess of forty hours per week, and in at least one instance, as many as 152 hours during a two-week period. Ex. H, App., pp. 49-72, Travis Paystubs; Ex. G, App., pp. 45-46, Travis Decl., ¶¶ 3-5.   And also like Plaintiff, Ms. Travis was paid a flat salary for her first forty hours, nothing for the time between hours forty and fifty, and straight time for all hours over fifty (determined by dividing her weekly salary by forty). Ex. G, App., p. 46, Travis Decl., ¶¶ 4-6; Ex. H, App., pp. 49-72, Travis Paystubs.   Because Ms. Travis believes that XPO has failed to pay her other Operations Supervisors all of their owed overtime wages, Ms. Travis joined this case as a party plaintiff by filing her Consent to Join form on December 4, 2017. ECF # 29.

As another example, Ms. Samantha Bosnick worked as an operations supervisor for XPO's warehouse operations at a facility located in Phoenix, Arizona. Ex. K, App., p. 210, Bosnick Decl.,

¶¶ 1-2.  Ms. Bosnick's duties, hours, and pay in Arizona mirrored those of Plaintiff Lo in Texas and opt-in Plaintiff Travis in Missouri. *Compare* Ex. K, App., pp. 210-211, Bosnick Decl., ¶¶ 2-4, *with* Ex. D, App., pp. 12-13, Lo Decl., ¶¶ 2-5, *and* Ex. G, App., pp. 45-46, Travis Decl., ¶¶ 2-5. In the experience of Plaintiff Lo, opt-in Plaintiff Travis, and Ms. Bosnick, XPO's common policy of failing to pay overtime premium pay for any hours between forty and fifty - - and of only paying straight time for hours over fifty - - applied to all operations supervisors. Ex. D, App., pp. 13, Lo Decl., ¶ 6; Ex. G, App., p. 46, Travis Decl., ¶ 6; Ex. K, App., p. 211, Bosnick Decl., ¶ 5.

In addition to Plaintiff and Ms. Travis, XPO employs and has employed other operations supervisors around the United States and has subjected them to this same policy of failing to pay any wages, let alone overtime for any hours between forty and fifty each week, and only paying these employees' straight-time rates of pay for all hours over fifty each week. FAC, ECF # 12, ¶¶ 3.4, 5.4, 5.9-5.13; Ex. D, App., p. 13, Lo Dec., ¶¶ 6-7.

As of the date of this motion, XPO has advertised similar supervisor positions for more than thirty-eight different locations around the United States, with nearly identical titles and job duties including "Supervisor Warehouse Operations," "Warehouse Operations Supervisor," "Warehouse Supervisor," "Operations Supervisor," and "Supervisor Operations." *See generally* Ex. I, App., pp. 74-199, National Job Board Postings.  These positions all describe identical or nearly identical job duties, and reflect the same positions that Plaintiff, Ms. Travis, and Ms. Bosnick held while working for XPO. *Id.*; Ex. G, App., pp. 45-46, Travis Decl., ¶¶ 1-5; Ex. D, App., pp. 12-13, Lo Decl., ¶¶ 2-5; Ex. K, App., pp. 210-211, Bosnick Decl., ¶¶ 2-5.  XPO has current operations supervisor openings in at least twenty different states. *See generally* Ex. I, App., pp. 74-199, National Job Board Postings (listing positions in Illinois, Pennsylvania, Texas, Kansas,

Georgia, Missouri, Alabama, Indiana, California, South Carolina, New York, Tennessee, New Jersey, Mississippi, Florida, Louisiana, Washington, Virginia, Oregon, and Arizona).

All of XPO's salaried employees were and are subject to the same common policy with respect to the payment of overtime:

> 6.2 Pay Procedures:
>
> All salaried employees are paid bi-weekly. . . . When operating requirements or other needs cannot be met during regular working hours, salaried employees are required to work a reasonable amount of overtime hours in order to accomplish their assignments, etc. . . . Employees who qualify as administrative, executive or professional employees within the meaning of the state and federal wage and hour laws are exempt from overtime pay (unless otherwise stated in individual offer letters) and are not subject to this section.  All non-exempt regular employees qualify for overtime pay.  All overtime hours worked will be paid in accordance with state and federal law.
>
> . . . Salaried exempt employees must record a minimum of 40 hours per week, inclusive of all pay codes.

Ex. J, App., pp. 201-208, Excerpt from XPO Employee Handbook Commercial Site Salaried Employees, at 6, 7 (App. pp. 204-205). *See also* Ex. D, App., p. 13, Lo Decl., ¶¶ 6-7; Ex. G, App., p. 46, Travis Decl., ¶¶ 6-7; Ex. K, App., p. 211, Bosnick Decl., ¶¶ 5-7.

Further, Plaintiff, Ms. Travis, and Ms. Bosnick can collectively recall at least fifteen other operations supervisors who worked for XPO during the last three years, and who were / are paid in the same manner as Plaintiff and Ms. Travis, and who XPO regularly required to work in excess of forty hours a week without receiving overtime premiums of one and one-half their regular rates of pay for all hours over forty each week. Ex. G, App., p. 47, Travis Decl., ¶ 7 (listing Marianne Grimm, James Pollard, Nelvin Allen, John Paxton, and Kevin Cox as other similarly situated FLSA Class members); Ex. D, App., p. 13, Lo Decl., ¶ 7 (listing Lora Mason, Charles (last name

unknown), Somphou (last name unknown), Robert Flores, Eddie Hang, and Caleb (last name unknown)); Ex. K, App., p. 211, Bosnick Decl., ¶ 6 (listing Dawn Eaton, Alex Knez, Phillip Carlson, and Ladan Bagheri).  And Plaintiff, Ms. Travis, and Ms. Bosnick all believe that other current and former XPO employees would be interested in joining this action if they were informed about its existence and notified that they need not fear reprisal for participating in it. Ex. D, App., p. 14, Lo Decl., ¶ 8; Ex. G, App., p. 47, Travis Decl., ¶ 8; Ex. K, App., p. 211, Bosnick Decl., ¶ 7.

In short, although as discussed below, the merits of the claims in the case are not presently before the Court on this motion, the evidence at this very early stage of this action demonstrates a consistent pattern of wrongdoing by Defendants, shows a common policy to willfully violate the FLSA, *see, e.g.,* Ex. G, App., pp. 46-47, Travis Decl., ¶¶ 5-8, Ex. D, App., pp. 13-14, Lo Decl., ¶¶ 5-8; Ex. K, App., p. 211, Bosnick Decl., ¶¶ 5-7, and is strongly probative of the fact that there are other "similarly situated" employees who worked for XPO around the nation who did not receive proper compensation for all hours worked in a week over forty in violation of the FLSA. For purposes of this conditional certification motion, the experiences of Plaintiff, Ms. Travis, and Ms. Bosnick, including their testimony about other workers, along with the evidence submitted to support their testimony, is more than sufficient to illustrate that there was indeed a "common practice or policy" of XPO to violate the FLSA.  Accordingly, as is next addressed, Plaintiff has met his minimal burden for the Court to grant the present motion and conditionally certify this case as a collective action and authorize Plaintiff to distribute notice of this action to all similarly-situated individuals who worked for XPO around the United States in the manner requested below.

III.   **ARGUMENT**

A.   **Legal Standard for Section 216(b) Notice to Putative Class Members: The Remedial Purposes of the FLSA Warrant Prompt and Accurate Notice to Potential Collective Action Members.**

Pursuant to 29 U.S.C. § 216(b), and unlike Rule 23 class actions, the FLSA's "collective action" provision allows one or more employees to bring an action for overtime compensation on "behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). FLSA actions are, consequently, not true representative actions as under Rule 23, but are instead actions brought about by individual employees who affirmatively join a single suit, meaning that "every plaintiff who opts in to a collective action has party status, whereas unnamed class members in Rule 23 class action do not." *Muhammad*, 2011 WL 863785, at *2; *see also Raniere v. Citigroup, Inc.,* 827 F. Supp. 2d 294, 313 (S.D.N.Y. 2011), *rev'd on other grounds, Raniere v. Citigroup, Inc.*, 533 Fed. App'x 11 (2d Cir. 2013). Thus, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

District courts have broad discretion to allow a party asserting FLSA claims on behalf of others to notify potential plaintiffs that they may choose to "opt-in" to the suit. *See Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989). This is because until an absent collective action member opts-in, the statute of limitations on his/her claims continues to run. 29 U.S.C. § 255(a); *Orozco v. Anamia's Tex-Mex, Inc.*, 2016 WL 6311237, at *1 (N.D. Tex. Oct. 6, 2016). It is thus important that notice be given promptly to preserve the claims of collective action members, and it is not uncommon for courts to approve expedited notice. *See Braunstein v. E. Photographic Labs, Inc.*, 600 F.2d 335, 336 (2d Cir. 1978); *Nieto v. Pizzati Enter., Inc.*, 2017 WL 1153375, at *3, *10 (E.D. La. Mar. 27, 2017) ("the statute of limitations on individual workers' claims

9

under FLSA are not automatically tolled, so prompt certification and notice advances the remedial goals of FLSA"); *Hoffmann v. Sbarro Inc.*, 982 F. Supp. 249, 262 (S.D.N.Y. 1997) (Sotomayor, *J*.).

In determining whether to facilitate notice to a putative class, the approach favored by courts in the Fifth Circuit is the *Lusardi* approach. *Kaluom v. Stolt Offshore, Inc.*, 474 F.Supp.2d 866, 871 (S.D.Tex. 2007) (discussing the use by courts in the Fifth Circuit of the approach enunciated in *Lusardi v. Xerox Corp.*, 122 F.R.D. 463 (D.N.J. 1988)). This approach has been recognized by the Fifth Circuit, *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213 (5th Cir. 1995), *overruled on other grounds*, *Desert Palace, Inc., v. Costa*, 539 U.S. 90, 90-91 (2003), and as this Court has explained "[a] majority of federal courts, including this district, have applied the *Lusardi* approach." *Lee*, 980 F. Supp. 2d at 758 (O'Connor, *J*.) (citing *Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 824 (N.D. Tex. 2007) (collecting Northern District of Texas cases following *Lusardi* as the "prevailing test among federal courts."). The two stages of the *Lusardi* test are the "notice stage" and the "decertification stage." *Mooney,* 54 F.3d 1207 at 1214.

The case currently before the Court is at the notice stage. "In the notice stage, the court makes a decision, based on the pleadings and affidavits, on whether notice of the action should be given to putative class members. This decision typically results in 'conditional certification' of a representative class." *Allen v. McWane, Inc.*, 2006 WL 3246531, at *2 (E.D. Tex. Nov. 7, 2006); *Scherrer v. S.J.G. Corp.*, 2008 WL 7003809, at *3 (W.D. Tex. Oct. 10, 2008). The Court may also consider other evidence submitted by the parties. *See H&R Block, LTD. v. Housden & Beard*, 186 F.R.D. 399, 400 (E.D. Tex. 1999); *Pedigo v. 3003 S. Lamar, LLP*, 666 F. Supp. 2d 693, 697, n.6 (W.D. Tex. 2009). "At the notice stage, the similarly situated standard requires nothing more than substantial allegations that the putative class members were victims of a single decision,

10

policy, or plan." *Vassallo v. Goodman Networks, Inc.*, 2015 WL 3793208, at *2 (E.D. Tex. June 17, 2015) (citations omitted); *Scherrer*, 2008 WL 7003809, at *3.

## B.     Nation-wide Notice Is Appropriate on the Facts Presented Because the Putative Class Members are Similarly Situated.

At the first stage of the two-stage certification process, courts determine whether named plaintiffs and potential opt ins are "similarly situated" based upon the allegations in a complaint supported by sworn statements. *Mooney*, 54 F.3d at 1213-14; *Lee v. Veolia ES Indus. Servs., Inc.*, 2013 WL 2298216, at *12 (E.D. Tex. May 23, 2013).   The record need only be "sufficiently developed . . . to allow court-facilitated notice" based upon "substantial allegations" or *some* factual support. *Garner v. G.D. Searle*, 802 F. Supp. 418, 422 (M.D. Ala. 1991); *Sperling v. Hoffman-LaRoche, Inc.*, 118 F.R.D. 392, 407 (3d Cir. 1988).   That is, as this Court has ruled, the determination at this stage uses a "lenient standard," and the plaintiff's burden "is not heavy." *Lee*, 980 F. Supp. 2d at 766, 768 (citing *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 366-67 (E.D. Tenn. 2006)). Based on that standard, if a plaintiff can show "identifiable facts and a clear nexus [that] bind the claims so that hearing the cases together promotes judicial efficiency," first stage certification is warranted. *See Foraker v. Highpoint S.W. Servs., L.P.*, 2006 WL 258047, at *4 (S.D. Tex. Sept. 7, 2006) (citing *Aguirre v. SBC Commc'ns, Inc.*, 2006 WL 964554, at *5 (S.D. Tex. Apr. 11, 2006)).

### *1.     A Reasonable Basis Exists to Believe Aggrieved Individuals Exist.*

In the present case, Plaintiff's FAC alleges Defendants failed to comply with the FLSA by failing to pay Plaintiff and other Operations Supervisors around the United States any pay, let alone proper overtime premiums for all hours they worked between forty and fifty per week, while paying them only "straight time" for all hours worked beyond fifty each week. *See* FAC. ¶¶ 5.1, 5.10-5.11. The Complaint also alleges that other Operations Supervisors around the United States performed similar duties as Plaintiffs.   *See* FAC ¶¶ 5.3, 5.4, 5.9-5.10.   What is more, the allegations in the

Complaint are substantiated by: sworn declarations from similarly situated Operations Supervisors who worked for XPO in Missouri, Ex. G, App., pp. 45-47, Travis, Decl., and Arizona, Ex. K, App., pp. 210-211, Bosnick, Decl., as well as Plaintiff's own sworn declaration, Ex. D, App., pp. 12-14, Lo Decl.; documents reflecting Plaintiff's "standard" employment agreement, Ex. F, App., pp. 28-43, Employment Agreement, and offer letter, Ex. B, App., pp. 7-8, Offer Letter; XPO's standard written policy for paying overtime compensation, Ex. J, App., pp. 201-208, Handbook Excerpt; paystubs reflecting this policy, Ex. E, App., pp. 16-26, Lo Paystubs;  Ex. H, App., pp. 49-72, Travis Paystubs; and XPO's job postings for positions around the United States with identical titles and job duties, Ex. I, App., pp. 74-199, National Job Board Postings.

This evidence soundly demonstrates that Plaintiff, opt-in Plaintiff Travis, Ms. Bosnick, and other Operations Supervisors around the United States performed similar duties, worked over forty hours in a week, and worked under the same illegal pay provisions as other individuals who have not yet been notified of the case.  Plaintiff has therefore easily made the "modest factual showing necessary for the Court to issue notice."  *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998).  Going even further, Plaintiff submits job postings found on XPO's own website, culled from at least thirty-eight different locations around the United States, confirming that Operations Supervisors all perform substantially the same job duties and were offered the same compensation for their work.  *See* Ex. I, App., pp. 74-199, National Job Board Postings. And considering that Defendants have characterized Plaintiff's Employment Agreement as a "standard" agreement, Plaintiff also submits strong evidence that other Operations Supervisors were paid in a similar manner. *See* Ex. F, App., pp. 28-43, Employment Agreement.

Plaintiff here presents more than enough evidence for this Court to grant conditional certification on a nation-wide basis.  Notably, the standard to certify a nation-wide collective remains

the same as the standard to certify smaller, local collective actions. *See, e.g., Alverson v. BL Rest. Operations, LLC*, 2017 WL 5491998, at *3 (W.D. Tex. Nov. 15, 2017) (quoting *Vargas v. HEB Grocery Co., LP*, 2012 WL 4098996, at *2 (W.D. Tex. Sept. 17, 2012) (describing conditional certification standard, in general, adopting *Lusardi* approach, and granting nation-wide collective based on "modest factual showing that . . . other potential plaintiffs are 'similarly situated.'").  For example, in *McCarragher v. Ryland Group, Inc.*, 2012 WL 4857575, at *3-4 (S.D. Tex. Oct. 11, 2012), the court granted first-stage certification of a nation-wide collective of salespersons based solely on declarations submitted from opt-in plaintiffs - - all of whom worked "in the vicinity of Houston, Texas"  - - and online "public job postings" describing defendants' job offerings "in different states." *Id.* at *2.  The *McCarragher* court deemed such evidence sufficient to certify a nation-wide overtime collective under *Lusardi*. *Id*. at *3-4.  Here, Plaintiff submits declarations not only on his own behalf, but from an opt-in Plaintiff in Missouri and a witness and soon-to-be opt-in Plaintiff from Arizona, along with nation-wide job postings, and evidence from XPO's own public website detailing their integrated, uniform treatment and operations.

## 2. *The Aggrieved Individuals Are Similarly Situated to Plaintiff in Relevant Respects.*

The relevant inquiry is whether the potential class members performed (1) the same basic tasks and (2) were subject to the same pay practices. *Vassallo*, 2015 WL 3793208, at *6; *see also Jie Zhang v. Wen Mei, Inc.*, 2015 WL 6442545, at *4 (E.D.N.Y. Oct. 23, 2015) (describing how the sole requirement for granting first-stage certification is to make a modest factual showing that other employees "were all similarly situated with *respect to being subject to the same policy* of being denied [ ] compensation' and whether a factual nexus exists among them.") (emphasis in original).  Indeed, "the analysis at this stage need not resolve the underlying factual dispute . . . Instead it properly turns *only* on whether Plaintiffs have presented substantial allegations [ ] the

13

putative class members were victim of a single decision, policy, or plan implemented by Defendants that violated the FLSA." *Scherrer*, 2008 WL 7003809, at *3 (citing *Foraker*, 2006 WL 2585047, at *4 n.16).

The primary duty of Defendants' Operations Supervisors, regardless of location, was to work side-by-side with other hourly, non-exempt "associates" to complete the tasks assigned to Defendants' particular job site - - whether that involved assembling materials on a production line, or receiving product in a warehouse environment - - while not receiving all of their overtime compensation for all hours worked over forty each week. *See* FAC ¶¶ 1.3, 3.4 5.3, 5.10-5.11, 6.4; Ex. G, App., pp. 45-46, Travis Decl., ¶¶ 2-6; Ex. D, App., pp. 12-13, Lo Decl., ¶¶ 2-6; Ex. K, App., pp. 210-211, Bosnick Decl., ¶¶ 3-6. Accordingly, Plaintiff, opt-in Plaintiff Travis, soon-to-be-opt-in Bosnick, and the collective members' duties at all times were both similar to one another and to those of non-exempt employees. As such, if Plaintiff and the proposed collective worked over forty hours in a week, which they did, Defendants have violated the FLSA by refusing to pay their Operations Supervisors overtime premiums. *See* FAC ¶¶ 1.3, 3.4 5.3, 5.10-5.11, 6.4; Ex. G, App., p. 46, Travis Decl., ¶¶ 4-7; Ex. D, App., p. 13, Lo Decl., ¶¶ 4-7; Ex. K, App., pp. 210-211, Bosnick Decl., ¶¶ 3-6.

The evidence developed thus far convincingly demonstrates that Defendants: (1) employed Operations Supervisors that worked more than forty hours per week around the United States; and (2) did not pay their Operations Supervisors overtime premiums, in spite of the fact that they worked more than forty hours per week on a regular basis. This failure to pay overtime supports Plaintiff's claim that he and the putative class were subject to the same illegal pay practices, which warrants granting Plaintiff's motion and authorizing Plaintiff's counsel to disseminate a notice to other similarly situated Operations Supervisors in the manner and format described below.

14

### 3.      *Similarly Situated Potential Plaintiffs Exist Around the Country.*

In addition to the factors enumerated above, some courts consider whether other individuals desire to opt-in and are similarly situated to those bringing the suit. *See, e.g., Flowers v. Mo's Steakhouse*, 2012 WL 1941755, at *2 (S.D. Tex. May 29, 2012); *Dybach v. Fla. Dept. of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991).

While one named Plaintiff has brought this collective action, there is already one additional opt-in Plaintiff who has joined this matter, and another who has provided a sworn declaration. Moreover, both Plaintiff Lo, opt-in Plaintiff Travis, and soon-to-be-opt-in Bosnick - - one of whom worked in Texas, another of whom worked in Missouri, and the third of whom worked in Arizona - - have identified additional current or former Operations Supervisors that they know to be similarly situated to them. *See* Ex. G., App., p. 47, Travis Decl., ¶ 7; Ex. D, App., p. 14, Lo Decl., ¶ 7; Ex. K, App., p. 211, Bosnick Decl., ¶ 6.  Even further, Plaintiff has submitted voluminous job board postings that XPO has recently listed on its own company website, reflecting that XPO is *presently* considering applications for at least sixty-three Operations Supervisor positions in at least thirty-eight different locations in at least twenty different states around the United States. *See* Ex. I, App., pp. 74-199, National Job Board Postings.   This demonstrates that a putative collective of similarly situated plaintiffs unquestionably exists, and, as displayed by opt-in Plaintiff Travis joining this case, desire to opt in to this action. *Pedigo*, 666 F.Supp.2d at 698  ("[t]he joinder of additional plaintiffs after the inception of the case is persuasive evidence that a putative class does exist); *Shaffner v. Cash Register Sales & Serv. of Houston, Inc.*, 2006 WL 1007542, at *1 (S.D. Tex. Apr. 17, 2006) (same). Again, this is further supported by the fact that Plaintiff's Employment Agreement is a "standard one," designating that XPO will pay him a flat salary and not stating that he will be paid overtime

as the FLSA requires. *See* Ex. F, App., pp. 28-43, Employment Agreement; Ex. B, App., pp. 7-8, Offer Letter.

Finally, as demonstrated by Plaintiff Lo's, opt-in Plaintiff Travis's, and Ms. Bosnick's personal knowledge, belief, and declarations, other similarly situated Operations Supervisors would opt into this lawsuit if they were to receive notice that they could opt into the lawsuit.  Ex. G, App., pp. 46-47, Travis Decl., ¶¶ 6-8, Ex. D, App., pp. 13-14, Lo Decl., ¶¶ 6-8; Ex. K, App., p. 211, Bosnick Decl., ¶¶ 5-7.

## IV.   <u>RELIEF SOUGHT</u>

Plaintiff seeks the issuance of notice to all putative members of the collective and the disclosure of the names and contact information (including the addresses, e-mail addresses and telephone numbers) of all Operations Supervisors who worked for XPO at any time from three years before the filing of Plaintiff's Original Complaint, i.e., August 15, 2014, to the present.  A proposed Notice is attached hereto as Exhibit L, App., pp. 213-218.  The notice provides clear instructions on how to opt-in and accurately states the prohibition against retaliation or discrimination for participation in an FLSA action.  The notice is "timely, accurate, and informative," thus meeting all legal requirements. *See Hoffmann-LaRoche, Inc.,* 493 U.S. at 172. The proposed notice achieves the goal of providing potential opt-ins with accurate and timely notice concerning the pendency of the collective action and should therefore be adopted.

**A.    The Court Should Allow Plaintiff to Send Notice to All Operations Supervisors who Worked for Defendants from Three Years before the Commencement of <u>this Action to the Present.</u>**

Plaintiff proposes to send notice to similarly situated persons employed within three years of the filing of the complaint. *Lee*, 980 F. Supp. 2d at 768-69 (O'Connor, *J.*) (granting plaintiffs' request to define collective as all "all Service Coordinators who were employed by Metrocare from

June 20, 2010, until the present, which is three years from the filing of Plaintiff Lee's original complaint."); *see also, e.g., Marshall v. Lousiana*, 2017 WL 86137, at *1 (E.D. La. Jan. 10, 2017) (describing order granting conditional certification for employees who worked for "three years directly preceding April 9, 2015" - - the date the complaint was filed); *Sultonmurodov v. Mesivita of Long Beach*, 2015 WL 5918415, at *4 (E.D.N.Y. Oct. 9, 2015) ("[T]he court holds that notices shall be sent out to those potential collective members employed within the three year period prior to the date of the filing of the Complaint.  Defendants may challenge the timeliness of individual plaintiffs' claims at a later date."); *Tamez v. BHP Billiton Petroleum (Americas), Inc.*, 2015 WL 7075971, at *7 (W.D. Tex. Oct. 5, 2015) (conditionally certifying FLSA class for all employees paid a "day rate at any time since three years prior to . . . the filing date for the Complaint."); *Marin v. Apple-Metro, Inc.*, 2014 WL 7271591, at *3 (E.D.N.Y. Sept. 16, 2014) (permitting notice period "to run from three years prior to commencement of the action, rather than the date of the notice"); *Mata-Primitivo v. May Tong Trading, Inc.*, 2014 WL 2002884, at *5 (E.D.N.Y. May 15, 2014) ("courts have permitted the period of employment to run from three years prior to the commencement of the action, rather than the date of the notice, as the claims of the potential opt-in plaintiffs are tolled on the date that their consent forms are filed."); *Coronado v. D. N.W. Houston, Inc.*, 2014 WL 2779548, at *1 (S.D. Tex. June 19, 2014) (describing conditional certification of class of current and former employees who worked for defendants "at any time during the three years before [the] Complaint was filed up to the present."); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011) (extending notice period to three years prior to filing complaint).

The complaint in this case was filed on August 15, 2017.  Thus, in order to provide notice of the action to all affected individuals, Plaintiff requests that the Court order the Defendants to

produce the names and all known contact information for those individuals who were employed at

any time within three years from the date of the filing of the Complaint, or from August 15, 2014,

to the present.

### B. The Court Should Order Defendants to Produce Potential Collective Members' Contact Information.

In addition to certifying the collective action, Lo requests that the Court also order

Defendants to produce the following within fourteen days of its Order:

> A list, in electronic format, of all persons employed by Defendants as Operations Supervisors who were paid overtime at their respective "straight-time" hourly rates of pay for all hours worked over fifty each week, and who were not paid any compensation, let alone overtime compensation, for any hours worked between forty and fifty each week at any point between August 15, 2014 and the present, which includes: names, addresses, all known mobile and home telephone numbers, all known e-mail addresses, work locations, and dates of employment.

*See, e.g., Venable v. Schlumberger Ltd. (Schlumberger N.V.)*, 2017 WL 2870400, at *6-7 (W.D.

La. June 5, 2017), *rep. & rec. adopted*, 2017 WL 2870063 (W.D. La. July 3, 2017) (ordering

defendants to produce to plaintiffs within fourteen days "the names of all potential members of the

collective class in an acceptable electronic format, along with their current or last known mailing

addresses, e-mail addresses, telephone numbers, and dates of employment."); *Jaso v. Bulldog

Connection Specialists, LLC*, 2015 WL 11144603, at *5-6, *8 (S.D. Tex. Oct. 15, 2015) (ordering

list to be produced in electronic format to include "each employee's name, mailing address, e-mail

address, telephone number, and current employment status."); *Fa Ting Wang v. Empire State Auto

Corp.*, 2015 WL 4603117, at *15 (E.D.N.Y. July 29, 2015) (granting the plaintiff's requests for

the putative opt-ins' contact information noting that "Plaintiff's routine request for the names,

mailing addresses, email addresses and telephone numbers of Defendants' drivers will assist in the

provision of notice to these potential opt-in plaintiffs"); *Hernandez v. Bare Burger Dio, Inc.*, 2013

WL 3199292, at *5 (S.D.N.Y. June 25, 2013) (quoting *Sexton v. Franklin First Financial, Ltd.*, 2009 WL 1706535, at *13 (E.D.N.Y. June 16, 2009)) (ordering the production of telephone numbers of the putative collective, finding that "[a]s has been noted by a number of courts in this circuit, 'courts often grant this kind of request in connection with a conditional certification of an FLSA collective action'"); *Hernandez v. Merrill Lynch & Co., Inc.*, 2012 WL 1193836, at *7 (S.D.N.Y. Apr. 6, 2012) ("in this day of electronic communication, courts have authorized defendants to provide email address[es] as well.").

### C. The Court should permit Plaintiff to send a Notice and a Reminder Notice via Mail, Email, and Text Message.

With respect to the sending of the notice, Plaintiff additionally requests that the Court allow him to send reminder notices to the potential opt-in plaintiffs thirty days after the original mailing of notice and opt-in forms in order to remind any potential collective members who have not yet opted into the case of the impending deadline for their response. *See Page v. Crescent Directional Drilling, L.P.*, 2015 WL 12660425, at *4 (W.D. Tex. Dec. 10, 2015) (citing *Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 516-17 (W.D. Tex. 2015)) (overruling defendants' objection to reminder notices as "unnecessary" and permitting plaintiff to send second notice); *see also, e.g., Birdi v. Brandi's Hope Cmty. Servs., LLC*, 2017 WL 2588089, at *4 (S.D. Miss. June 14, 2017) (ordering reminder postcard by mail and email thirty days after initial notice mailed); Ex. P, App. pp. 225-27, *Valerio v. RNC Industries, LLC*, 2:14-cv-03761 (LDW)(AKT), ECF # 51 (E.D.N.Y. June 24, 2016) ("[T]he Court joins the prevailing view that sending a reminder notice is consistent with the FLSA's objective of informing potential plaintiffs of the collective action and their right to opt-in.") (citation and internal quotations omitted).

Because "targeted reminders facilitate the remedial purposes of the FLSA," courts increasingly permit plaintiffs to send a reminder even where defendants argue the same is

"unnecessary." *Gronefeld v. Integrated Prod. Servs., Inc.*, 2016 WL 8673851, at \*6 (W.D. Tex. Apr. 26, 2016) (ordering reminder notices over defendants' objection); *see also, e.g., Burns v. Chesapeake Energy, Inc.*, 2017 WL 1842937, at \*8-9 (W.D. Tex. Mar. 14, 2017) (stating that "none of the methods requested by Plaintiffs are out of the ordinary" where plaintiffs requested to send notice via email, to post the notice, and send a "reminder postcard"); *Mongiove v. Nate's Corp.*, 2016 WL 590460, at \*7-8 (E.D.N.Y. Feb. 11, 2016) (rejecting defendants' argument that "Plaintiffs have utterly failed to make any showing as to why a reminder notice is necessary" in favor of plaintiffs' argument that "[a] reminder notice makes sense because putative opt-in Plaintiffs' FLSA claims continue to run unless they join this action."); *Page*, 2015 WL 12660425, at \*4 (same); *Sultonmurodov*, 2015 WL 5918415, at \*2 ("Sending a reminder notice is consistent with the FLSA's objective of informing potential plaintiffs of the collective action and their right to opt-in."); *Morris v. Lettire Const. Corp.*, 896 F. Supp. 2d 265, 275 (S.D.N.Y. 2012) ("Given that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in, we find that a reminder notice is appropriate.").

A proposed Reminder Notice is attached hereto as Exhibit M, App., p. 220.

Moreover, Plaintiff should be permitted to send the original and reminder notices via email, and also send a text message and reminder text message containing a link to the notices on Plaintiff's Counsel's website, on the grounds that many potential plaintiffs may have changed residences since their employment with Defendants may have ended. A proposed subject line and body of the email, which shall contain the FLSA collective action notice (and reminder notice, when appropriate) as an email attachment, is attached hereto as Exhibit N, App., p. 222.

The overwhelming majority of case law, developed among courts throughout the country - - including in the Fifth Circuit - - weighs in favor of sending notice to putative class members by

email and text message.  *See, e.g.*, *Dearmond v. Alliance Energy Servs., L.L.C.*, 2017 WL 3173553, at * 3 (E.D. La. July 25, 2017) (ordering text message notice); *Escobar v. Ramelli Group, L.L.C.*, 2017 WL 3024741, at *3 (E.D. La. July 7, 2017) (quoting *Mahrous v. LKM Enterprises, L.L.C.*, 2017 WL 2730886, at *4 (E.D. La. June 26, 2017) ("Courts have approved of the use of text messages because it facilitates notice to class members who may have changed addresses before the opt-in period."); *Ramos v. Capitan Corp.*, 2016 WL 8674617, at *6 (W.D. Tex. May 18, 2016) (granting email notice); *Page*, 2015 WL 12660425, at *3-4 (ordering production of email addresses and phone numbers); *Jones v. Cretic Energy Servs., LLC*, 149 F. Supp. 3d 761, 776-77 (S.D. Tex. 2015) (permitting follow-up reminder notice to potential class members via mail, email, and by making telephone calls);  *Eley v. Stadium Group, LLC*, 2015 WL 5611331, at *3 (D.D.C. Sept. 22, 2015) (granting text notice); *Irvine v. Destination Wild Dunes Mgmt., Inc.*, 132 F. Supp.3d 707, 711 (D.S.C. 2015) (finding text message notice to be warranted, stating that it "has become a much more mobile society with one's . . . cell phone number serving as the most consistent and reliable method of communication."); *Bhumitharnarn v. 22 Noodle Market Corp.*, 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015) (permitting plaintiff to send notice to potential opt-ins via text message, reasoning that text messaging was the parties' favored method of communication); *Vasto v. Credico* (USA) LLC, 2016 WL 2658172, at *16 (S.D.N.Y. May 5, 2016) (approving text message notice); *McKinzie v. Westlake Hardware, Inc.*, 2010 WL 2426310, at *5 (W.D. Mo. Jun. 11, 2010) (ordering defendant to provide cellular phone numbers following conditional certification).

As Magistrate Judge Austin recently observed, "[i]n the world of 2017, email and cell phone numbers are a stable, if not primary, point of contact for the majority of the U.S. population, and thus that [*sic*] using email and texts to notify potential class members is entirely appropriate."

*Vega v. Point Security, LLC*, 2017 WL 4023289, at *4 (W.D. Tex. Sept. 13, 2017). Based on this observation, Judge Austin recommended that the district court order plaintiff's counsel to "send a text message to the Class Members with a link to the Notice of Rights and Consent Form." *Id.* at *5. The district court adopted that recommendation.[4]

A proposed text message, which will include a link to Plaintiff's counsel's website featuring the notice, is attached hereto as Exhibit O, App., p. 224. Thus, Plaintiff requests that this Court order that he be permitted to send a text message and reminder text message containing the link to the original and reminder notices on Plaintiff's Counsel's website.

**D.      The Court Should Order that Defendants Post Notices in the Workplace at all Locations.**

Additionally, Plaintiff also requests that the Court order Defendants to post the Notice and consent forms in a conspicuous place at each of the work locations of potential collective action members. *See, e.g., Minyard v. Double D Tong, Inc.*, 237 F. Supp. 3d 480, 486-87 (W.D. Tex. 2017) (citing *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 493 (E.D. Cal. 2006) (approving notice over defendants objection and noting that "[c]ourts have approved physical posting as an appropriate form of notice in FLSA actions."); *Jones*, 149 F. Supp. 3d at 776 (granting request to post notice over defendants' objection because posting is "likely to further the broad remedial purposes of the FLSA by facilitating notice"); *Garcia v. TWC Admin., LLC*, 2015 WL 1737932, at *5 (W.D. Tex. Apr. 16, 2015) (granting request to post notice because defendant's locations are "not open to the public, so there is no danger of reputational harm or other adverse

---

[4] *See also Dearmond.*, 2017 WL 3173553, at * 3 (ordering text message notice); *Escobar*, 2017 WL 3024741, at *3 (citing *Mahrous*, 2017 WL 2730886 at *4) ("Courts have approved of the use of text messages because it facilitates notice to class members who may have changed addresses before the opt-in period."

impact on TWC's business" and because "posting notice in the workplace is a simple and effective way of ensuring that notice reaches all of the putative class members currently employed by TWC."); *Rosario v. Valentine Ave. Discount Store, Co., Inc.*, 828 F. Supp. 2d 508, 521 (E.D.N.Y. 2011) ("Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail."); *Harhash v. Infinity West Shoes, Inc.*, 2011 WL 4001072, at *5 (S.D.N.Y. Aug. 24, 2011) ("Courts in this District routinely order that Notice be posted in common areas or employee bulletin boards, even when notice is also provided via first-class mail."). Indeed, following conditional certification of an action, courts routinely require the defendants to post notice, even though putative opt-ins are also being notified of the action via mail. *See, e.g.*, *Batres v. Valente Landscaping, Inc.*, 2014 WL 2111080, at *2 (E.D.N.Y. May 21, 2014) (quoting *Rosario*, 828 F. Supp. 2d at 521) ("'Courts routinely approve requests to post notice on employee bulletin boards and in other common areas even where potential members will be notified by mail.'"); *Kim Man Fan v. Ping's on Mott, Inc.*, 2014 WL 1512034, at *4 (S.D.N.Y. Apr. 14, 2014) (same).

Therefore, the Court should order the Defendants to post notice and consent forms in a conspicuous place at the work location of the putative members.

## V.    CONCLUSION

Plaintiff has shown that there are a number of other Operations Supervisors that were employed by Defendants around the United States who performed the same or similar duties that Plaintiff did, that worked over forty hours per week, and who were not paid overtime premiums for such hours. By establishing that Plaintiff and other Operations Supervisors were similarly situated, were subject to the same pay practices, and by establishing that a putative collective does exist, Plaintiff has provided sufficient evidence supporting his request for conditional certification

in this matter and has more than met the lenient standard of showing that notice to the putative

Class is appropriate.  Therefore, for the foregoing reasons, Plaintiff respectfully requests that the

Court:

(1)     Conditionally certify this case as a collective action;

(2)     Order that a judicially approved notice be sent to all putative FLSA Class members;

(3)     Approve the form and content of Plaintiff's proposed Notice and Reminder Notice;

(4)     Order Defendants, within fourteen days of the Court's Order, to produce a computer-readable data file containing the names, last known mailing addresses, all known home and mobile telephone numbers, all known email addresses, work locations, and dates of employment, of all potential collective action members who worked for Defendants at any point from August 15, 2014 to the present;

(5)     Authorize a sixty-day notice period for the putative FLSA Class members to join this case;

(6)     Permit Plaintiff's counsel to disseminate notice of this action, in the form attached hereto as Exhibits L, N, and O, via regular mail, e-mail, and text message;

(7)     Order Defendants to post the Notice and Reminder Notice in a place where employees are likely to view it all of Defendants' locations where Operations Supervisors are employed, and provide an affidavit attesting to their compliance and swearing that the notice will remain posted during the entire opt-in period;

(8)     Permit Plaintiff's counsel to send the proposed Reminder Notice to the putative FLSA collective members thirty days after sending the initial Notice, via regular mail, text message and e-mail, in the form attached hereto as Exhibit M;

and

(9)     Order any such further relief that the Court deems proper to effectuate its ruling on Plaintiff's motion.


Respectfully submitted,

/s/ Douglas B. Welmaker                      /s/ Michael R. Minkoff
Douglas B. Welmaker, Esq.                    Michael R. Minkoff, Esq.
Attorney-in-Charge                                  (admitted *pro-hac vice*)
State Bar No. 00788641                        Alexander T. Coleman, Esq.
Scotty Jones, Esq.                                      (admitted *pro-hac vice*)
State Bar No. 00796848                        Michael J. Borrelli, Esq.
                                                                    (admitted *pro-hac vice*)


DUNHAM & JONES ATTORNEYS AT          BORRELLI & ASSOCIATES, P.L.L.C.
LAW, P.C.
1800 Guadalupe Street                         655 Third Avenue, Suite 1821
Austin, Texas 78701                             New York, New York 10017
Tel: (512) 777-7777                             Tel: (212) 679-5000
Fax: (512) 340-4051                             Fax: (212) 679-5005
Email: doug@dunhamlaw.com              Email: mrm@employmentlawyernewyork.com


*ATTORNEYS FOR PLAINTIFF AND PUTATIVE MEMBERS OF THE COLLECTIVE*



**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Motion for Conditional Certification has been electronically served on all counsel of record via Notice of Electronic Filing on a known Filing User through the CM/ECF system on December 8, 2017.



/s/ Douglas B. Welmaker
Douglas B. Welmaker